May it please the Court, Bert Rublin on behalf of the Appellant 99 Restaurants, with the Court's permission I'd like to reserve two minutes for rebuttal. You may have it. Thank you. You may end up with a little more time because I'd like to talk to you about the case. The arguments are very close. This is very difficult. But one of the questions is whether this issue of whether this is a question of arbitrability for the Court or for the arbitrator can be answered in the abstract to apply to all sorts of cases. This is a wage and hour case and the employer has effectively locked up all of the employees into these arbitral agreements. So the consequences of this case are truly enormous because if all employees in the restaurant field do that and unless you're going to agree to class-wide arbitration in the arbitral agreement, which you'll never do, the net result may well be that the only enforcement actions available will be those brought by the Secretary of Labor. Are you following me thus far? I'm following you so far. Okay. So I'm making an assumption that arbitrators might be slightly more favorably inclined to class actions than courts would be, especially with the Supreme Court language, the discouraging class action arbitrations. So I think we have actually in this little case a momentous issue. And I was wondering about asking for amicus briefs. I know you'd like to get the case resolved quickly, but it may be we would like to have a bit more assistance on this question of in the wage and hour law context where the statute itself authorizes an employee to bring in action on behalf of all those similarly situated. If we were to ask for amicus briefs, could you provide us with a list of organizations both sides that we should extend the invitation to? I can't speak for my brother, but I could certainly provide the court in a matter of, what, two weeks with a list of potential organizations? No, no. Within one week. Oh, one week. So we can get the invitation out because then they're going to want a month or two to file a brief. Certainly. Your Honor, could I speak to the issue that you've raised about? Yes, please. I just wanted to give you fair notice of what at least I am worried about. As a threshold matter, Your Honor, I would point out that there has been no unconscionability challenge to this arbitration agreement by Ms. Kieran. I would also point out that class action waivers in the context of employment agreements have been approved, including by the Supreme Court. The Supreme Court decision in Concepcion, I think, pretty well addressed the issue of the And I would also point out that the Massachusetts State Supreme Judicial Court just last year rendered two decisions, one of which was under the Massachusetts Wage Act, the same act that's implicated in this case, in which the Massachusetts Court, and this is the Machado case versus System 4, it's cited in the briefs, and in particular there's a block quote in our reply brief, specifically said that notwithstanding the statutory right under the Massachusetts Wage Act to bring a class action, that federal law under the FAA preempts that statutory right, and that nonconsensual class arbitration is not permitted as a matter of federal law, therefore notwithstanding the state's statutory right to bring a wage act claim, and that was in the context of a class action waiver, there was no ability on the part of the employee in the Machado case to proceed on a class basis. Now we don't have a class action waiver here. What we have here is a silent arbitration clause, and the issue presented for this court is who decides, and I don't know that we can draw any inference or make any assumptions as to whether to construe silent arbitration agreements as allowing class proceedings or not. Except your opponent is arguing for that outcome, so I assume he thinks he gets some advantage. Well, it's unclear, Your Honor. If you look at the AAA class arbitration docket, you will see myriad decisions coming out both ways, and it's also important to bear in mind, that under the AAA rules, whoever loses in a clause construction award, that is the decision interpreting the agreement to ascertain whether it permits the availability of a class proceeding, it's not the class certification decision itself, but just a threshold question of whether class arbitration is available, whoever loses that clause construction award has a right to appeal to the district court, and that decision can ultimately be appealed to a court of appeals. That's exactly what happened in the Opalinsky case that we submitted in our Rule 28J letter from the Third Circuit not too long ago. What happened there was the district court had granted the defendant's motion to compel arbitration, but found that it was up to the clause construction award by the arbitrator in favor of the plaintiff, saying that class arbitration was available. Motion to vacate filed in the district court, denied, was affirmed, goes up on appeal. So either way, Your Honor, the courts ultimately get to resolve these issues, whether it's in the first instance, as we suggest, or by way of appeal from a decision by the on what is arbitrable. What would the parties reasonably have expected, which is really the touchstone here, because arbitration is a matter of consent. Counsel, in light of the law that you've described and how consequential it is, whether class arbitration is available, well, I assume that we are going to see fewer and fewer agreements that are silent or ambiguous on the issue. It seems to me that employers would be well advised to make explicit what the agreement is. Now, I don't, I guess the agreements that we're talking about here have some age to them, and some of them predate the case law that you've described, but I would imagine in the future there's not going to be silence or ambiguity on this issue. Judge Lippis, not only is that I think it's fair to say that agreements like this one that is at issue before this court are an anachronism, and that by and large, in many industries, not just the employment context, we do see class action waivers. Now, I do want to emphasize that statement. Does that affect your view at all of the utility of the kind of amicus contributions that were made to this case? Well, this is an important issue. There are other cases that are still out there in the pipeline where this issue has been teed up. There's a pending case in the Ninth Circuit. There's a pending case in the Second Circuit from the A2P SMS antitrust litigation, the district court opinion from the Southern District of New York that was addressed in her recent Rule 28J response. So it is an issue that is coming up far less frequently because, to be honest, silent arbitration agreements are, in this day and age, rather unusual, but I do think there are a number of interested parties on both sides of the aisle who would be interested in lending their views to the court in addressing this case. Now, if I could speak to the issue... Yes, you may. If I could speak to the issue of arbitrability, we obviously have submitted two circuit court opinions rendered just within the past year. They were both unanimous. They were both very well reasoned, cogent. We submit that they are fully consistent with Supreme Court precedents concerning both class actions, class actions in arbitration, the fundamental and important consequences of allowing class arbitration, which Chief Judge Lynch, you addressed in your decision in Fantastic Sam's. Judge Lippes, you addressed in the Christian versus Comcast case. You specifically rejected the notion, which is proffered here by my brother, that a class action is merely a procedural device that should be relegated to arbitrators because it's just a matter of procedure. That's always the problem in the law. We set up a two-part test and then there's something that's in between. Right. And I would suggest, following up on the Christian case, that rather than the Fantastic Sam's case, upon which my brother places such great reliance, Chief Judge Lynch, your opinion addressed at great length the fundamental ramifications of proceeding in class arbitration, outlining the concerns that were expressed by the Supreme Court in the Stolt-Nielsen case. And your opinion repeatedly emphasized that none of those concerns was implicated in Fantastic Sam's. However, in the Christian versus Comcast case, we had the flip side of the coin. It's basically, for all intents and purposes, functionally equivalent to the issue here. Judge Lippis, your opinion addressed the issue of whether a class action waiver was enforceable and who should make that decision. Is that a procedural issue that should be left for arbitrators? And that's the position that Comcast took in that case. As an aside, I would note that it's somewhat ironic that Comcast took that position, but that the Christian case and the case we're sitting here on today present the same core issue, which is who decides whether class arbitration is available pursuant to an agreement. And I would submit that just as the issue of the enforceability of a class action waiver, because of its substantive implications which were emphasized in the Christian decision, is a gateway issue of arbitrability that is presumptively reserved for the courts, so too here the availability of class arbitration has the same substantive implications and should likewise be deemed a gateway issue presumptively reserved for the courts. You've been indulgent, but if I could just move on to the second issue, which is teed up in the briefs, which is, assuming that this is an issue for the courts, does this agreement allow class arbitration? And I think the answer is rather clear from the contractual language. These agreements are not terribly long. You've also got the benefit of the ADR booklet and the job application form. There's no mention anywhere in any of these documents of class arbitration, much less is there any mention of any right on behalf of the employee to bring a lawsuit on herself. And quite to the contrary, all of the documents consistently use personal pronouns, I, me, my, which is inconsistent with the notion that the employee is authorized to act on behalf of others. We've submitted several cases, a couple California cases, a case from the Southern District of Ohio, that have emphasized that the use of personal pronouns in arbitration agreements is inconsistent with the notion that the defendant agreed to class arbitration. And Chief Judge Lynch, let me go back to the initial point that you made, which is consistent with what the Supreme Court has said in Stolt-Nielsen and Concepcion. It's really inconceivable, given the lack of appellate rights that are inherent in an arbitration process, because you're subject to a very stringent standard of review under the FAA when you seek to vacate an arbitrator award. It's really inconceivable that a defendant would willingly, as the Supreme Court said, bet the company by agreeing to class arbitration. So there needs to be some evidence, evident in the contract, that suggests that the company agreed to class arbitration. But counsel, this any and all claims language has been read at times to provide a contractual basis for the conclusion that the company has agreed that an issue like whether class arbitration is available will be decided by the arbitrator, even at the level of the Supreme Court. Well, the any and all claims language, first of all, is a standard boilerplate clause that is utilized in just about every arbitration agreement. It's form language that's suggested by the AAA and other arbitration organizations. The Supreme Court majority opinion in Stolt-Nielsen rejected the use, and Justice Ginsburg dissented, but the majority found that the use of the any and all disputes language was not sufficient to create a right to class arbitration. Similar language was utilized and relied upon in the recent Third Circuit case in Opelinski and the Sixth Circuit case in Reed Elsevier. We've also cited a Fifth Circuit case that pointed out, and this is the Reed versus Metropolitan University case, and dealt specifically with that issue, and basically said it would turn Stolt-Nielsen on its head because you would in the context of every arbitration agreement, because it is boilerplate, find that the use of the any and all disputes language was sufficient to create a right to class arbitration, and the Supreme Court emphasized in Stolt-Nielsen that merely by agreeing to arbitration, a company has not given its consent to class arbitration, but relying on the any and all disputes language would essentially do that. I've overextended my time. I appreciate the Court's thank you. Good morning, and may it please the Court. We would support the submission of amicus briefs just to address that issue right off the top. Okay, one week, both sides. The core issue here is who should interpret an ambiguous agreement. This case is unlike the waiver. In a case where there's a clear class waiver, the issue in Christian was that there was a conflict between the statutory scheme, the antitrust scheme, and this class waiver. That's why it was a question for the Court. In this Court's cases where there's been an ambiguous agreement, and there's some uncertainty about whether the agreement calls for class arbitration, this Court consistently has sent that issue to an arbitrator, and that's what should happen here. The touchstone, because it's the case that sets out the test, is the Howsam case, and that's the case that the Plurality Opinion in Basel applied, an opinion offered by Justice Scalia. And the test in Howsam, there's both a general standard, and then there's a more specific test, and my brother touched on this general standard in his argument. And that general standard is whether this is a would have expected a court to decide, or whether it's an issue that they would have expected an arbitrator to decide. And looking at this particular case, there really can be no serious question about what the parties expected here, because the arbitration agreement references the AAA rules. Those are the set of rules that govern this case, and the AAA rules provide quite a number of reasons for the arbitration agreement to decide. I just want to read one sentence from the AAA rules. Upon appointment, the arbitrator shall determine as a threshold matter in a reasoned partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class. This is the clause construction award. There is a sort of tension out there between looking at the language of every agreement, the any and all language, the reference to the arbitral award, arbitral rules, and what seems to be a more categorical approach that the Supreme Court seems to be edging toward, certainly certain issues like whether a class can be certified are so consequential that they want to reserve that for the courts to decide. There is this tension between the categorical approach and the look at the language of every agreement, and at least Stolt-Nielsen seems to be edging, not with complete agreement by the justices, toward that more categorical approach. Well, I agree, Your Honor. There's clearly a tension in the law, but the cases that Howsam is still... Yeah, they haven't overruled it yet. And this Court's precedents are still good, and this Court consistently, when there's been, has taken a more case-by-case approach, where in the particular case there's an ambiguous agreement where an arbitrator may resolve or read the agreement either way, that in that case, in the first instance, it's a decision that should go to the arbitrator. But I acknowledge that there is that tension, absolutely. And it's... Counsel, I mean, doesn't Stolt-Nielsen seem to... It does seem to make clear that there has to be a basis in the language of the arbitration agreement to support the conclusion that the class, the class arbitration, that a class-wide proceeding is something for the arbitrator to decide. And it seems to say that language has got to be clear and unmistakable. Isn't that correct? I would respectfully disagree with that reading of Stolt-Nielsen, Your Honor. I think the... That's not what Stolt-Nielsen said, because in that case, there was a stipulation, for whatever reason, between the parties that they had reached no agreement on the issue. So the Court said, we can't say that there's anything for the arbitrator to do. But the Court was also quite clear to say that there can be cases where there's no express, a silent agreement, like here, where based on traditional contract interpretation principles, industry custom, and interpreting ambiguities against the drafter, things of that notion, which are state law contract principles, that a silent agreement can be read to provide for class arbitration. That's, that's what the holding of Stolt-Nielsen is. And I think the discussion about the fundamental differences between class arbitration and individual arbitration, which wasn't a revelation to anybody, I think we all knew that there were differences between the two, was to make the point that the mere agreement to arbitrate is insufficient standing alone to, to say that there was an agreement for class arbitration. That you have to do a more detailed inquiry if there's a disputed, a dispute between the parties, as there is here, using contract interpretation principles for whoever's making that decision to determine one way or the other whether the parties intended there to be class arbitration. And they also made clear, I think, because in that case, it was a weird, weird to me, admiralty case, where there was no custom of class actions, much less class arbitrations. Here, as, as you noted, Judge Blanche, this is a wage and hour case. Written into the statute are provisions both on the federal and state side for class or of class arbitrations in the AAA docket in the wage and hour area. We've all been doing this for many years. The Scourge Act decision back in 2007 was on that very issue. It was a class arbitration around the wage and hour issue. So unlike the admiralty issue in Stolt-Nielsen, here there's a very clearly established custom and practice of class action. So it's very different. And so I think the discussion about the fundamental differences makes sense in the context of given what the court was deciding. But the court wasn't saying, and the court has not said, that class arbitrations can never go forward or that parties can never agree to them. And they also made clear that there does not have to be, and this court has subsequently recognized this, express agreement to have a class action. That that can be an implicit agreement. That is, there doesn't have to be an express provision that says in the contract, yes, we can have class arbitration. But if you have an ambiguous agreement like there is here, that under traditional contract interpretation principles, it can be read to provide for class arbitration. There are two models of decision. One is you look at whether the judge looks at whether there's ambiguity on this issue. If the judge finds some ambiguity, the judge doesn't decide it himself or herself, but sends it to an arbitrator. That's the model that you've been arguing for. The other model is, no, there are just some types of questions that unless the agreement is clear about the answer, that sort of categorically go to judges. Isn't that really what's at issue here? Well, I think that is, that's one way to look at it, Your Honor. Our position, just to be clear, is that when there is an express class action waiver, we don't dispute that that's an issue that has to be addressed by a court. Because then the question is, is there an enforceable contract? Yes, of course, under both theories, that would hold. But where, as in this case, and I guess there might be a question about exactly how this test is created, but whereas in this case, there is an ambiguity and there's broad language and a clear dispute between the parties about what that language means, that kind of case needs to go to an arbitrator in the first instance to resolve that ambiguity. Because under the contract interpretation principles at issue, it's something the parties expected the arbitrator to decide. And the AAA rules, which the 99 wrote into its own agreement, expressly say that that's something that an arbitrator will decide in this case. Okay. When you both give us organizations whose help you'd like as amicus, do tell us what other circuits and what other courts this issue is pending in. Okay. Yes, Your Honor. Thank you. Thank you. Yes, you do. Yes. I know I overextended my time, but I appreciate your indulgence. I want to very quickly address my brother's arguments in short order. His primary argument seems to be that there's ambiguity in the contract. Ergo, this should be sent to an arbitrator to decide whether class arbitration is available. I submit first that there is no ambiguity in this contract. There's no reference to class arbitration. There's no reference to... But your argument is not dependent on that proposition, correct? Correct. But I do want to stress one thing with respect to ambiguity. If that's the argument, that is inconsistent with Supreme Court precedent. In the first options of Chicago case versus Kaplan, the Supreme Court made it very clear that given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to as giving the arbitrators that power. For doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide. The Supreme Court has repeatedly held that there's a very stringent test. In the Renner Center case, they called it a heightened standard of proof. And what they've said over and over again, Your Honors, is it requires clear and unmistakable evidence to overcome the presumption that the gateway issue is decided in the first instance by the court. When you have ambiguous language, that is not enough. And that's what the Sixth Circuit said in Reed Elsevier. At most, if there's ambiguous language, and we don't think there is here, that is not enough to meet that heightened standard of proof. Second, very quickly, my brother read from Rule 3 of the supplementary rules of class arbitration. The supplementary rules are nowhere mentioned in any of the documents signed by Ms. Kieran. There's no incorporation by reference of the supplementary rules. And indeed, the employment rules which govern this contract themselves don't incorporate the supplementary rules. And finally, the very same rule that my brother relies upon was raised in the Reed Elsevier case, and the Sixth Circuit rejected it, noting that the supplementary rules themselves say that the rules should not be relied upon as evidence either for or against class arbitration. Very last point, Your Honors, with respect to Massachusetts and the Wage Act, the decision in Machado specifically said, quote, it is of no avail that a particular state statute like the Wage Act provides for a substantive right to bring a class proceeding. The Supreme Court requires mutual consent to class arbitration. That was just last year in the Machado case. Thank you, Your Honors. Thank you.